IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

E.W. POWELL, ADMINISTRATOR
FOR THE ESTATE OF
JOSE RODRIGUEZ,
        Plaintiff,

v.                                     Civil Action No. 3:15-cv-612-JAG

DIEHL WOODWORKING
MACHINERY, INC. et al.,
        Defendants.

**OPINION**

This products liability action arises from a fatal incident at Museum Resource & Construction & Millwork, Inc. Jose Rodriguez died when a ripsaw produced a "kickback" sending a sliver of wood out of the machine, which struck Rodriguez in the head. Rodriguez's estate ("Rodriguez") now seeks compensatory and punitive damages from the producer of the ripsaw, Diehl Machines, Inc., and its holding company, Wabash Holding Corp. (collectively, "Diehl"). Rodriguez asserts claims for general negligence, negligent manufacture, negligent failure to warn, breach of implied warranty, negligent design, and wrongful death. Diehl filed a motion to dismiss the entire amended complaint because Rodriguez cannot establish privity between himself and Diehl. Alternatively, Diehl asks the Court to dismiss individual sections of the complaint for various reasons. The Court grants the motion in part, and denies it in part. Count III fails to state a claim because it does not plead privity, an essential element of that claim. Parts of Count I fail to state a claim recognized under Virginia law. The Court, however, finds that Rodriguez's other claims sufficiently state a claim, and accordingly denies the rest of Diehl's motion to dismiss.

## I. BACKGROUND

On October 3, 2012, Rodriguez stood at the end of a Diehl Model 75 ripsaw as his brother fed a board into the machine.  Normally, the saw trims a board, and a belt carries the board out of the machine and into the waiting hands of a person on the other end.  Unfortunately, this time the ripsaw experienced a "kickback", meaning the saw sheared off a sliver of wood, which shot out of the saw assembly.  This projectile struck Rodriguez in the head, killing him.

Rodriguez brings several negligence claims, an implied warranty claim, and a wrongful death claim.  Count I asserts so-called general negligence by Diehl in designing, manufacturing, testing, marketing, selling, and failing to recall the ripsaw.[1]  Count II says that Diehl negligently failed to warn Rodriguez about the dangers associated with the ripsaw.  Count III claims that Diehl breached implied warranties associated with the ripsaw.  Count IV asserts that Diehl negligently designed and manufactured the ripsaw.  Finally, Count V alleges a wrongful death claim.

## II. DISCUSSION[2]

Diehl asks the Court to dismiss the entire amended complaint for lack of privity.  Privity, in the products liability context, requires that a person injured by a product have a direct connection with that product's manufacturer.  *See* Va. Code Ann. § 8-654.3, *repealed by* Acts

---

[1] No cause of action exists for "general negligence" under Virginia products liability law.  *See supra* section B(i) (detailing the recoverable theories under the Virginia law of negligence).

[2] Diehl filed its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss gauges the sufficiency of a complaint without resolving any factual discrepancies, testing the merits of the claim, or judging the applicability of any defenses raised by the non-moving party.  *Republican Party of N.C. v. Martin*, 960 F.2d 943, 952 (4th Cir. 1992).  In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, "state a claim to relief that is plausible on its face."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

1977, c. 617 (detailing Virginia's former statutory privity requirements). The Virginia legislature abolished the privity requirements for many product liability claims in 1962. Diehl, however, says that because it produced and sold the ripsaw before 1962, Virginia's anti-privity statutes do not apply, and Rodriguez must establish privity between himself and Diehl. Rodriguez essentially concedes privity does not exist, instead claiming that the privity requirement does not apply because the ripsaw falls within an exception for inherently dangerous products. Rodriguez correctly states that if the ripsaw could qualify as an inherently dangerous product, then the Court cannot dismiss the negligence claims for lack of privity.

Diehl also asserts alternative bases to dismiss certain sections of the amended complaint. First, it argues that the Court should dismiss paragraphs 8B, 8C, 9B, and 9C of Count I, which lay out claims for duties to test and recall a product, because these claims rely on duties not recognized under Virginia law. Next, it urges the Court to dismiss the implied warranty claim in Count III for lack of privity. Diehl also asks the Court to dismiss Paragraphs 8A, 8D, 8E, 9A, 9D, 9E and 10 of Count I, because it says these paragraphs duplicate claims made in Count IV. Finally, Diehl argues that the Court should dismiss Count II because it asserts a post-sale duty to warn, which Diehl claims Virginia law does not recognize. The Court analyzes each claim in detail below.

### A.  Lack of Privity as a Basis for Dismissing the Amended Complaint

#### i.  Pre-1962 Privity Requirements and the Anti-Privity Statutes

Prior to 1962, plaintiffs bringing products liability claims in Virginia had to establish privity between themselves and the defendant manufacturer. *See H. M. Gleason & Co. v. Int'l. Harvester Co.,* 197 Va. 255, 261-63, 88 S.E.2d 904, 908-09 (Va. 1955) (detailing Virginia's traditional privity doctrine). Under the pre-1962 statute, only a direct purchaser of a product

from a manufacturer, "natural persons" living in that buyer's home, and that buyer's guests could recover for injuries caused by the product. Va. Code Ann. § 8-654.3, *repealed by* Acts 1977, c. 617. Under those requirements, a plaintiff like Rodriguez could not recover.

In 1962, the Virginia legislature altered this privity requirement in products liability actions. First, it passed Va. Code Ann. § 8.2-318, which states that lack of privity between a plaintiff and defendant does not constitute a defense for either breach of warranty or negligence actions brought against a product manufacturer or seller. In 1966, it extended the reach of § 8.2-318 by passing Va. Code Ann. § 8.01-223, which stated that lack of privity does not constitute a defense for any negligence actions, including those previously not covered by § 8.2-318. These sections, however, only apply *prospectively* from June 29, 1962. *Farish v. Courion Industries, Inc.*, 754 F.2d 1111, 1116-17 (4th Cir. 1985). Thus, if a plaintiff cannot show manufacture or sale of the product after that date, the pre-1962 privity requirements apply. *Id.*

This case involves an antiquated ripsaw. Rodriguez does not allege that the manufacture or sale of the saw occurred after 1962, and virtually concedes that it happened before the statutory changes.[3] The failure to plead privity would ordinarily be fatal to the case. The inherently dangerous exception, however, prevents the Court from dismissing the amended complaint in its entirety.

*a. The Inherently Dangerous Exception to the Privity Requirements*

Virginia has long recognized an exception to the privity requirements for inherently dangerous products. The exception pre-dates the 1962 anti-privity statues, and applies regardless

---

[3] Normally the Court does not look at evidence outside the complaint in determining the motion to dismiss, but in this case, the Court looked to Diehl's response to the Court's February 11, 2016 Order requesting all evidence of the manufacture and sale of the ripsaw at issue in this case to confirm that pleading privity is necessary. (Dk. No. 18.) Diehl provided evidence that it manufactured and sold the ripsaw by April 21, 1942. (Dk. No. 19, Ex. A.)

of the product's manufacture or sale date. *Farish*, 754 F.2d 1111, 1118. Courts will consider a product inherently dangerous if "the danger of injury stems from the product itself and not from any defect in it." *Gen. Bronze Corp. v. Kostopulos*, 203 Va. 66, 69, 122 S.E.2d 548, 551 (Va. 1961). Further, an inherently dangerous product must also possess dangers not obvious to the average user. *Spruill v. Boyle-Midway, Inc.*, 308 F.2d 79, 83-84 (4th Cir. 1962); *see also Glover v. Johns-Manville Corp.*, 525 F. Supp. 894, 903-04 (E.D. Va. 1979). This limited exception applies only to negligence actions. *Farish*, 754 F.2d at 1118.

Diehl asserts that the inherently dangerous exception cannot apply to the ripsaw in this case. It relies upon the Virginia Supreme Court's decision in *Burrus v. Suddith*, 187 Va. 473, 47 S.E.2d 546 (Va. 1948). In that case, the Virginia Supreme Court heard an appeal of a trial court's judgment in favor of a plaintiff injured by a ripsaw. The trial court ruled that the ripsaw in that case was not an inherently dangerous object. *Id.* at 477-78, 47 S.E.2d at 548. On appeal, the Virginia Supreme Court simply chose not to disturb the lower court's ruling on that issue. *Id.* The justices did not squarely address the inherent danger of the ripsaw in that case, or of other ripsaw makes and models. This makes Diehl's comparison between that case and the ripsaw at issue in this case speculative at best. In short, *Burrus* provides insufficient authority for this Court, without further factual development, to deem the Diehl Model 75 ripsaw not inherently dangerous.

Accordingly, the Court finds that while Rodriguez has not pleaded privity, he has sufficiently pleaded that the inherently dangerous exception may apply, and the Court needs further factual development before it can make a final determination on the exception.

Diehl has attacked Counts IV and V only on privity grounds. Accordingly, the Court denies the motion to dismiss Counts IV and V.

5

**B. *Alternative Bases for Dismissing Portions of Count I and all of Count II***

Recognizing that the privity argument may fail, Diehl provided alternative bases for dismissing portions of Count I, the general negligence claim, and all of Count II, the failure to warn claim.

### i. *The Law of Negligence in Products Liability Cases in Virginia*

While the law recognizes the danger of negligently designed products, it also recognizes that manufacturers cannot produce accident-proof products. *Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 505 (E.D. Va. 2013) (citing *Besser Co. v. Hansen*, 243 Va. 267, 276, 415 S.E.2d 138, 144 (Va. 1992)). Thus, products liability law addresses only those products deemed unreasonably dangerous. The Supreme Court of Virginia defines an unreasonably dangerous product in three ways: "if it is defective in assembly or manufacture, unreasonably dangerous in design, or unaccompanied by adequate warnings concerning its hazardous properties." *Morgen Indus., Inc. v. Vaughan*, 252 Va. 60, 64, 471 S.E.2d 489, 492 (Va. 1996). Put another way, Virginia law only recognizes three products liability claims: negligent assembly or manufacture, negligent design, and failure to warn. "By implication any other type of product-liability claim cannot succeed." *Sykes v. Bayer Pharms. Corp.*, 548 F.Supp.2d 208, 215 (E.D. Va. 2008).

A plaintiff bringing a failure to warn claim must show that the manufacturer:

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Funkhouser v. Ford Motor Co.*, 285 Va. 272, 281, 736 S.E.2d 309, 313 (Va. 2013) (internal citation omitted).

*a. Count I – General Negligence Claim*

Rodriguez brings a so-called "General Negligence" claim in Count I. Rodriguez broadly alleges several claims based on different theories of negligence. Virginia law recognizes only the three traditional products liability theories mentioned above: negligent assembly or manufacture, negligent design, and failure to warn. The Court must determine if it can fit the individual claims in Count I into one of these three theories. If the Court cannot do so, the claim fails. *Sykes*, 548 F.Supp.2d at 215.

The Court first reviews paragraphs 8A, 8D, 8E, 9A, 9D, 9E, and 10 of Count I. As a whole, these claims assert that if Diehl conducted inspection and quality control (Am. Compl. ¶¶ 8A, 9A), adhered to federal regulations (*Id.* at ¶¶ 8D, 9D), and adhered to industry practices (*Id.* at ¶¶ 8E, 9E), it would have designed a safer ripsaw. The plaintiff claims that because Diehl failed to do these things it produced a defectively designed ripsaw, which proximately caused Rodriguez's death. (*Id.* at ¶ 10.) The Court interprets these paragraphs as negligent design claims, and in future proceedings in this case will consider them along with Rodriguez's other negligent design claims in Count IV. Accordingly, the Court denies the motion to dismiss paragraphs 8A, 8D, 8E, 9A, 9D, 9E, and 10 of Count I.

The Court now considers the failure to test claim contained in paragraphs 8B and 9B of Count I. Rodriguez argues that Diehl failed to "properly test the ripsaw machine in order to determine and ensure the safety of the machine before placing the product in to the stream of commerce." (Id. at ¶¶ 8B, 9B.) While a manufacturer must test its products, this does not constitute a separate duty but rather, "is subsumed within the general duty of the manufacturer to avoid acting in a negligent manner. . . ." *Jones v. Ford Motor Co.*, 263 Va. 237, 260-261, 559

S.E.2d 592, 604 (2002).[4]  "No court has yet accepted a 'failure to test' theory as a viable claim apart from the three traditional product claims. . . ." *Ball*, 963 F. Supp. at 506.  Consequently, the Court must either fit this claim into one of the traditional theories, or dismiss it altogether.

The Court cannot construe paragraphs 8B and 9B as a failure to warn claim because Rodriguez did not plead that Diehl had reason to know that the ripsaw required additional testing. *See Torkie-Tork v. Wyeth*, 757 F. Supp. 2d 567, 572 (E.D. Va. 2010) (stating that the Virginia Supreme Court, in failure to test claims brought under the failure to warn theory, established a "reason to know" standard in order to require additional testing).

Likewise, the Court cannot construe these paragraphs as a negligent design claim because Rodriguez does not allege that the failure to test led to a defective design, or that additional testing would have led to a "reasonable alternative design". *See* Restatement (Third) of Torts: Products Liability, § 2(b) (1998) (A product is unreasonable in design when ". . .the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design. . . .")  Accordingly, the Court dismisses paragraphs 8B and 9B of Count I for failure to state a claim upon which relief can be granted.

Finally, the Court considers Rodriguez's claims in paragraphs 8C and 9C of Count I. Rodriguez claims that Diehl failed to discontinue sales or recall the ripsaw once it discovered it could produce a dangerous kickback.  (Dk. No. 12, at ¶ 8C.)  Virginia law does not recognize a duty to recall. *Paschall v. CBS Corp.*, No. 3:11-cv-431, 2011 U.S. Dist. LEXIS 104725, at *12-13 n.4 (E.D. Va. Sept. 14, 2011).  Accordingly, the Court dismisses paragraphs 8C and 9C of Count I for failure to state a claim upon which the Court can grant relief.

---

[4] A manufacturer may need to do additional testing, beyond those required by law or regulations, if it has reason to know of a product's dangerous properties and the need for further testing. *Torkie-Tork v. Wyeth*, 757 F. Supp. 2d 567, 572 (E.D. Va. 2010).

### b. *Count II – Failure to Warn Claim*

In Count II, Rodriguez alleges that Diehl did not warn that the ripsaw could produce a deadly kickback. The inherently dangerous exception protects Count II from dismissal based on lack of privity. Diehl argues that this claim still fails because it would require a manufacturer to warn about dangers discovered after selling the product, and Diehl asserts Virginia law does not recognize this so-called post-sale duty to warn.

The Virginia Supreme Court has not explicitly recognized a post-sale duty to warn. *McAlpin v. Leeds & Northrup, Co.*, 912 F. Supp. 207, 209-10 (W.D. Va. 1996) (stating that this issue "is by no means settled in Virginia . . . ."). Yet, the Virginia Supreme Court has not explicitly denied its existence either. *Id.* For years, the Fourth Circuit and federal district courts in Virginia have grappled with the question of whether this duty exists. This has produced two competing views on the issue.

The first view, a strict approach adopted in *Estate of Kimmel v. Clark Equipment Co.*, states that a manufacturer only has a post-sale duty to warn of dangers it knew or should have known existed at the time of the sale. 773 F. Supp. 828, 831 (W.D. Va. 1991).[5] The second view, a looser approach adopted in *McAlpin v. Leeds & Northrup, Co.*, holds a manufacturer liable for failing to warn about dangers discovered after selling a product, if it was reasonable for the manufacturer to provide such warnings upon discovering the dangers. 912 F. Supp. at 209-10.

The Fourth Circuit seems to support the second view. *See Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 280 (4th Cir. 1987) ("There seems no question that, if the defendant

---

[5] However, the *Kimmel* court did recognize that post-sale information may be relevant to show that the defendant manufacturer acted recklessly by manufacturing a product without adequate warnings. *Estate of Kimmel*, 773 F. Supp. at 831.

discovered that the machine it had sold to the plaintiffs was not safe, it had a duty to notify the plaintiffs and a failure to do so would be actionable negligence.") (internal citation omitted); *Bly v. Otis Elevator Co.*, 713 F.2d 1040, 1045-46 (4th Cir. 1983).[6]

The Virginia Supreme Court's decisions also provide legal and policy reasons for adopting the second view. First, in *Featherall v. Firestone Tire & Rubber Co.*, 219 Va. 949, 960, 252 S.E.2d 358, 366 (Va. 1979), the Court adopted § 388 of the Second Restatement of Torts, which places no limits on negligence actions where a manufacturer knew or should have known about a danger. *McAlpin*, 912 F. Supp. at 210-11. Second, in *Ford Motor Co. v. Phelps*, 239 Va. 272, 276-77, 389 S.E.2d 454, 456-57 (Va. 1990), and *General Motors Corp. v. Lupica*, 237 Va. 516, 520-22, 379 S.E.2d 311, 314 (Va. 1989), the Virginia Supreme Court discussed admitting evidence of defects which occurred both before and after the sale of the products, while making no distinction between the pre-sale and post-sale evidence. *McAlpin,* 912 F. Supp. at 211. Finally, the *McAlpin* Court stressed that imposing a post-sale duty on manufacturers respects the Virginia Supreme Court's policy preference that the manufacturer should bear this burden because it possesses superior knowledge of the product as compared to the customer. *Id.* (citing *Featherall*, 219 Va. at 962, 252 S.E.2d at 366).

This Court adopts the *McAlpin* approach, and finds that Rodriguez sufficiently pleaded a failure to warn claim. Accordingly, the Court denies Diehl's motion as to Count II.

---

[6] *McAlpin* also said that *Kimmel* may have misconstrued the Fourth Circuit's reasoning in *Bly*. *McAlpin*, 912 F. Supp. at 209-10. Specifically, *Bly* held that a post-sale duty to warn under an implied warranty theory asks if the failure made the product "unreasonably dangerous," whereas under negligence theory, a court asks whether the failure to warn was itself unreasonable. *Bly*, 713 F.2d at 1045-46. The former theory concerns itself with the reasonableness of the product, the latter with the conduct of the manufacturer. *Id.* at 1046. *McAlpin* opined that *Kimmel* may have overlooked this distinction, and thus ruled too strictly regarding a post-sale duty to warn. *McAlpin*, 912 F. Supp. at 209-210.

### C.  Privity Basis for Dismissing Count III

Diehl claims that even if the inherently dangerous exception protects Rodriguez's negligence claims, that exception does not apply to the implied warranty claims in Count III. Accordingly, it asks the Court to dismiss Count III for lack of privity.

Virginia's prospective anti-privity statues apply to warranty claims but only for products manufactured or sold after 1962.  If a plaintiff bringing a warranty claim cannot prove that manufacture or sale occurred after 1962, the privity requirements apply.  Unlike for negligence claims, the inherently dangerous exception does not apply to warranty claims. *Farish*, 754 F.2d at 1118 (stating that the inherently dangerous exception applies only to negligence claims). Because Rodriguez cannot establish privity, and the inherently dangerous exception does not apply to warranty claims, Count III fails to state a claim upon which relief can be granted. Accordingly, the Court dismisses Count III.

### III. CONCLUSION

In sum, the Court GRANTS IN PART and DENIES IN PART Diehl's motion to dismiss the amended complaint.  The Court GRANTS the motion as to paragraphs 8B, 8C, 9B, and 9C of Count I, and to Count III in its entirety, and dismisses these claims.  The Court DENIES the motion as to paragraphs 8A, 8D, 8E, 9A, 9D, 9E, and 10 of Count I, and instead construes them as negligent design and manufacture claims.  The Court will consider these paragraphs along with those in Count IV.  The Court DENIES the motion as to the remainder of the amended complaint.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: ___9/3/16___
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge